**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**JOHN NUNEZ** :

Plaintiff, :

v. :

**AMERICAN AIRLINES INC.,** :

Defendant. :

CIVL ACTION
Case No.: 1:25-cv-21630-LMR

FILED BY MC D.C.
MAY 0 9 2025
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

**PLAINTIFF'S CONSOLIDATED OMNIBUS OPPOSITION TO DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(B)(6), REQUEST FOR EMERGENCY TEMPORARY RESTRAINING ORDER UNDER RULE 65, ASSERTION OF NEW AND INDEPENDENT HARMS, AND FORMAL OPPOSITION TO ANY REASSIGNMENT TO JUDGE ALTMAN**

## INTRODUCTION

**NOW COMES** Plaintiff John Nuñez ("Plaintiff"), a United States military veteran, member of a protected class, elite AAdvantage and loyalty traveler. Plaintiff built a respected career in financial services at the highest levels of professionalism and regulatory compliance before transitioning to his current consulting work. And respectfully submits this Consolidated Omnibus Opposition to Defendants' Motion to Dismiss under Rule 12(b)(6), Request for Emergency Temporary Restraining Order under Rule 65, Assertion of New and Independent Harms, and Formal Opposition to any Reassignment to Judge Altman.

Plaintiff does not seek to merely rehash prior grievances. While fully prepared to argue and defend the factual record surrounding the original June 2022 incident if necessary, Plaintiff's claims here principally arise from **fresh, independent harms** inflicted in 2024 and 2025:

(1) the April 7, 2024 wrongful denial of boarding following a full-fare ticket purchase and direct assurance from the AAdvantage Desk that Plaintiff was "welcomed back"; and

(2) the March 28, 2025 retaliatory letter authored by American Airlines to the FAA, doubling down on false narratives after Plaintiff's protected OIG referral.

These new acts of misconduct create a separate and ongoing stream of injury — emotional, reputational, and financial — that trigger a new limitations period and lie well outside the Montreal Convention's two-year bar. Ongoing FAA administrative litigation, concealed evidence, retaliatory conduct, and new independent torts sustain Plaintiff's claims and render dismissal inappropriate at this stage.

Further, Defendants voluntarily chose to file their Motion to Dismiss before the Honorable Magistrate Judge Lauren Fleischer Reid. By doing so, Defendants have waived any objection to her jurisdiction under *Roell v. Withrow*, 538 U.S. 580 (2003). Judicial economy, consistency, and fairness dictate that this matter remain with Judge Reid and not be reassigned to Judge Altman, who previously dismissed Plaintiff's related action solely for procedural reasons without reaching the merits.

## STATEMENT OF FACTS: UNLAWFUL TARGETING, ASSAULT, CONSPIRACY, AND RETALIATION

### 1. Rosa Celi's Fabrication of Nonexistent Law and Dereliction of Duty as Purser

The incident that ultimately deprived Plaintiff of his travel rights and caused significant harm was initiated by Flight Attendant Rosa Celi, who was acting as Purser — the lead cabin crew member responsible for ensuring compliance with airline policy and federal regulations. During the flight, Celi falsely asserted that federal law prohibited Plaintiff from using the first-class lavatory. No such law exists. Rather than enforce a legitimate policy, Celi subjectively denied Plaintiff access to the lavatory based on personal bias, despite his elite loyalty status. This deliberate fabrication created a false pretext to escalate the situation, portraying Plaintiff as a disruptive passenger without any factual or legal basis. Critically, although Celi's actions were central to the subsequent enforcement actions against Plaintiff, she **never testified during the FAA administrative proceedings**, depriving Plaintiff and federal authorities of the opportunity to fully examine the legitimacy of her claims. Celi's misconduct, initiated from a position of leadership, set in motion the cascade of retaliatory and unlawful acts that followed.

### 2. Plaintiff's Simple Request for a Beverage and Second Breach of Contract

Following Flight Attendant Rosa Celi's fabrication regarding federal law, Plaintiff — seeking to deescalate the situation — politely requested a beverage he was explicitly entitled to under his AAdvantage® Gold elite loyalty benefits. Under American Airlines'

published AAdvantage® Terms and Conditions , elite members are entitled to complimentary beverage service even when seated in the Main Cabin. Rather than honoring this contractual obligation, Flight Attendant Sanchez mocked and belittled Plaintiff in front of other passengers, escalating Plaintiff's humiliation publicly.

Sanchez's conduct constituted not only a **second material breach** of Plaintiff's loyalty contract but also clear **negligence** in recognizing and delivering the service owed to elite status members. Furthermore, Sanchez's behavior violated American Airlines' own stated customer service principles, aggravating Plaintiff's emotional distress and amplifying the hostile environment aboard the aircraft.

The Administrative Law Judge in Plaintiff's FAA proceeding found Plaintiff's account of these events credible and found Sanchez's testimony exaggerated and inconsistent with the record . This misconduct by American Airlines' crew members further supports Plaintiff's claims for breach of contract, negligent supervision, and intentional infliction of emotional distress.

**3. Battery and Quiroz's Failure to De-Escalate**

During the aft galley confrontation, Flight Attendant Sanchez physically struck Plaintiff on the nose without provocation, constituting actionable battery under Florida law. Rather than intervening to de-escalate as required under FAA InFO 21006 guidance for Level 2 threats, Flight Attendant Quiroz failed to apply calming techniques and instead enabled Sanchez's misconduct. Quiroz's failure to de-escalate escalated the situation further, directly contradicting FAA and airline protocols, and materially contributed to Plaintiff's emotional harm, public humiliation, and unlawful removal.

1 See FAA InFO 21006 (March 2021), FAA Order 8900.1 Volume 11, and "Tackling Unruly Passengers – Strategy Guide" (FAA/DOT), which collectively establish required crew responses to Level 2 threats, including verbal de-escalation, non-confrontational behavior management, and proper documentation of incidents. The failure to de-escalate or to accurately report physical confrontations may violate 14 C.F.R. § 121.580 and applicable Crew Event Reporting System (CERS) obligations. Airline personnel are expected to neutralize — not escalate — disputes unless a verified safety threat exists.

### 4. No FAA Threat Response Protocols Were Followed

Plaintiff was never restrained, never physically combative, and no verified Level 2 threat was ever documented in accordance with FAA standards. Despite this, Captain Jaffee removed Plaintiff from the aircraft without any direct observation, relying entirely on hearsay from crew members whose accounts were inconsistent, exaggerated, or later discredited by FAA findings. The failure to implement any of the FAA's required de-escalation techniques — including verbal diffusion, coordinated crew communication, and structured threat assessment — represents a clear breach of the agency's own Level 2 threat response guidance.1

1 See FAA Order 8900.1, Volume 11, Chapter 2, Section 1; FAA InFO 21006 (March 2021); and "Tackling Unruly Passengers – Strategy Guide" (FAA/DOT), which collectively mandate that crew members facing a suspected Level 2 threat must attempt documented de-escalation strategies, threat differentiation, and restraint only as a last resort. The FAA emphasizes that reliance on hearsay and failure to follow chain-of-command or threat verification protocols may violate 14 C.F.R. § 121.580 and related safety directives.

### 5. Breach of AAdvantage Loyalty Contract

Despite having flown over **75 times** to visit his son and maintaining **Million Miler** and **elite AAdvantage status**, Plaintiff's loyalty privileges were arbitrarily stripped without due process. Flight attendants failed to honor even basic beverage entitlements or seating rights that Plaintiff was contractually owed, and the Conditions of Carriage and loyalty program were violated.

1 See *AAdvantage® Terms and Conditions* (Effective March 1, 2024), which explicitly state that members agree to a binding loyalty agreement ("AAdvantage® Program Agreement") governing benefits, rewards, and entitlements, including complimentary service, seating, upgrades, and priority handling, which are contractually extended based on tier status. See also: *AAdvantage® Member Status Benefits*

**6. Language Barrier and Crew Negligence**

Despite Flight Attendant Sanchez's seniority, the crew's limited English fluency and inability to communicate effectively in high-noise conditions led to a breakdown in basic customer service and conflict de-escalation. The incident occurred in the rear galley — a section of the aircraft known for poor acoustics and high ambient noise — where Plaintiff's references to his AAdvantage® entitlements were misunderstood as defiance. Rather than verifying his statements or offering clarification, the crew defaulted to false legal claims and escalated the situation unnecessarily. FAA-sponsored research confirms that speech intelligibility in such aircraft environments is degraded, especially in the aft cabin, increasing the risk of miscommunication. Making matters worse, Flight 1124's scheduled departure was already strained due to the late inbound arrival of the same aircraft (Flight 1125 from Miami), which landed well behind schedule. The crew, likely under pressure to turn the aircraft quickly, failed to engage in FAA-recommended Level 2 threat de-escalation protocols, opting instead for immediate ejection without verified cause. This sequence of events shows not incidental error, but systemic crew resource and training failure under stress.[3]

**Footnote 3**: See FAA Order 8900.1 Volume 11 (Crew Resource Management); FAA Research Paper, *Understanding Challenges, Developing Solutions, and Informing Decision Making*, ICBEN Congress, Karolinska Institutet, 2021. The FAA's findings affirm that high ambient noise levels, especially in the aft cabin, inhibit verbal clarity. In such conditions, FAA protocol mandates cautious, verified handling of disputes — particularly under threat Level 2 guidance. Coupled with the delayed arrival of Flight 1125 from Miami, which reduced turnaround time, the crew's rushed and linguistically compromised response reflects a negligent failure in training, supervision, and regulatory adherence.

**7. Unjust Enrichment and Economic Harm**

American Airlines retained Plaintiff's full fare and then charged a cancellation fee after denying him boarding — offering in return a non-usable $53.48 trip credit. The airline's retention of

Plaintiff's funds, while also stripping him of travel rights and loyalty benefits, constitutes unlawful and unjust enrichment. This economic harm, compounded by the loss of a critical client engagement due to the travel ban, further demonstrates the tangible, ongoing damage caused by American Airlines' misconduct.4

**Footnote 4:** See *Restatement (Third) of Restitution and Unjust Enrichment* § 1 (2011): "A person who is unjustly enriched at the expense of another is subject to liability in restitution." The airline retained Plaintiff's money and issued a credit he could not use, constituting economic harm under Florida law and established federal principles.

**8. Civil Conspiracy and Coordinated Misconduct**

Plaintiff alleges a coordinated effort by flight crew, certain passengers, and FAA investigators (including Moon, Villiers, and Habib) to fabricate misconduct claims, misrepresent the nature of the incident, and cover procedural violations. The false narrative constructed against Plaintiff — a peaceful, sober elite-status traveler — was advanced to justify disproportionate action and to shield airline personnel from scrutiny. This deliberate orchestration supports a claim for civil conspiracy under applicable tort law.

**9. Plaintiff Ordered the Breathalyzer**

Anticipating that the crew would fabricate intoxication allegations, Plaintiff voluntarily requested

a breathalyzer test to establish his sobriety — which he passed. This preemptive act demonstrates Plaintiff's awareness of the crew's bias and his good-faith effort to disprove

false claims. The breathalyzer result was later ignored or omitted in official records, underscoring the lack of fair process.

**10. Retaliation and the March 28 Internal Email**

American Airlines' internal email dated March 28, 2025, confirms that the airline doubled down on its misconduct allegations against Plaintiff — after he had attempted to rebook and return to normal travel. This communication reveals a retaliatory effort to preserve its litigation posture, rather than to offer a truthful or restorative customer resolution. It demonstrates the airline's intent to injure Plaintiff rather than rectify a wrong.

**11. Defamation and Cyberbullying by Jorge Cura**

Most damningly, in written correspondence dated April 24, 2025, Cura admitted in his own words that he had relied on "incomplete and misleading information" and expressed regret for failing to verify the facts. He further attempted a limited retraction, conceding the original report contained material inaccuracies. While he publicly denied being present on the flight, FAA enforcement records — including the official passenger manifest — confirm that he was seated in **Seat 1A** on Flight 1124. These facts will be substantiated during discovery. Cura's admissions,

false denials, and contemporaneous knowledge of the incident constitute clear evidence of actual malice and support a prima facie case of **defamation per se**. The reputational harm, emotional distress, and cyberbullying that followed — including harassment of Plaintiff's minor son — further support a claim for **negligent infliction of emotional distress.**[1]

**Footnote 1**: Plaintiff will produce authenticated copies of the April 24, 2025 email admission and the FAA's passenger manifest confirming Cura's seat assignment during discovery. These documents are referenced herein pursuant to *Twombly*, *Iqbal*, and *Doe v. Miami-Dade County*, 279 F. Supp. 3d 1272 (S.D. Fla. 2017), for purposes of plausibility pleading.

**12. Ongoing FAA Appeal and OIG Referral**

Plaintiff's administrative appeal of the FAA's enforcement action remains pending, with the agency's final determination still unresolved. In addition, Plaintiff has submitted a formal referral

to the Department of Transportation's Office of Inspector General (OIG) outlining serious procedural misconduct, factual misrepresentations, and regulatory failures by FAA agents directly involved in the original investigation. These matters are not speculative — they are active, documented, and under government review.

In light of these ongoing proceedings, equitable tolling of any statute of limitations is both warranted and necessary. As recognized in *Bailey v. Glover*, 88 U.S. 342, 349–50 (1874), where a party "remains in ignorance of [their] rights without any fault or want of diligence," the statute of limitations does not begin to run until the fraud or misconduct is discovered. Courts have reaffirmed this principle in the context of administrative agency action and delayed discovery, particularly where "extraordinary circumstances" or agency misconduct prevent timely filing. See also *Holland v. Florida*, 560 U.S. 631, 649 (2010) ("Equitable tolling is appropriate when the petitioner has been pursuing his rights diligently, and… some extraordinary circumstance stood in his way.").

Here, both the pendency of the FAA appeal and the gravity of the OIG referral demonstrate ongoing interference with Plaintiff's ability to obtain a timely and complete adjudication. Until these intertwined agency matters are resolved, Plaintiff's claims cannot reasonably be deemed time-barred under settled tolling doctrine. Here, both the pendency of the FAA appeal and the gravity of the OIG referral demonstrate ongoing interference with Plaintiff's ability to obtain a timely and complete adjudication. Until these intertwined agency matters are resolved, Plaintiff's claims cannot reasonably be deemed time-barred under settled tolling doctrine.

Federal courts apply a two-prong standard for equitable tolling: (1) the plaintiff must show that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way. *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 256 (2016); *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Plaintiff satisfies both prongs: he has actively pursued

his rights through pending FAA appeals and formal OIG referral, while confronting agency misconduct and deliberate concealment of key facts. These extraordinary administrative entanglements justify equitable tolling as a matter of law.

**13. Harm to Family and Legacy**

Plaintiff's wrongful treatment on Flight 1124 occurred in view of his minor son and has stained the legacy of his late father — a 33-year veteran of American Airlines. The psychological impact of the public humiliation, racial profiling, and retaliatory action extends beyond economic loss. It disrupted familial relationships, undermined Plaintiff's standing as a father and professional, and desecrated a family legacy deeply tied to the airline.

## KOLB AND PECCHIO'S UNAUTHORIZED CONDUCT WARRANTS SANCTIONS

As a self-represented litigant confronting entrenched corporate counsel, Plaintiff respectfully invokes this Court's authority not out of hostility, but necessity. These violations undermine the integrity of the proceeding and Plaintiff's right to a fair hearing.

Plaintiff respectfully moves for Rule 11 sanctions against Defendants' counsel Kelly Kolb and James Pecchio for improper, harassing, and extrajudicial conduct, including contacting Plaintiff without court authorization and attempting to intimidate Plaintiff through unsolicited communications during ongoing litigation. These acts violate Florida Bar ethics rules, ABA Model Rule 4.2, and Federal Rule of Civil Procedure 11. Plaintiff further notes that Defendants' counsel, Kelly Kolb, has engaged in reckless and bad faith behavior that exacerbates Plaintiff's emotional distress and directly undermines the integrity of this proceeding.

Without formal service of the new Complaint, Kolb initiated extrajudicial surveillance of Plaintiff's personal Twitter account, extracting private materials (including the

March 28th American Airlines letter) outside of formal discovery protocols. Kolb then used this improperly obtained material to send unsolicited emails directly to Plaintiff, labeling Plaintiff "reckless" based on disputed allegations, despite no court order having adjudicated the merits of Plaintiff's claims. This stalking and prejudgment behavior triggered Plaintiff's PTSD symptoms, induced severe emotional distress, and constitutes a violation of professional responsibility norms, ethical standards under the Florida Bar, and Federal Rule of Civil Procedure 11. Such extrajudicial intimidation reflects a clear intent to chill Plaintiff's constitutional right to petition for redress and warrants immediate judicial scrutiny and sanctions.

## LEGAL STANDARD

Under *Haines v. Kerner*, 404 U.S. 519 (1972), pro se pleadings must be construed liberally. Dismissal is inappropriate if any plausible claim exists. *Twombly*, *Iqbal.*

Rule 65 permits temporary relief where irreparable injury and likelihood of success are shown. Plaintiff satisfies the four-part test for injunctive relief under *Winter v. NRDC*: (1) he faces irreparable harm from continued blacklisting and reputational damage; (2) he has demonstrated likelihood of success on the merits through documented breaches and retaliation; (3) the balance of equities favors restoring travel rights to a loyal consumer unjustly excluded; and (4) the public interest strongly supports accountability and deterrence against retaliatory bans by common carriers.

## ARGUMENT

### I. PLAINTIFF STATES ACTIONABLE CLAIMS

- *Battery*: *Sullivan v. Atlantic Fed. Sav. & Loan Ass'n*, 454 So.2d 52 (Fla. 4th DCA 1984).

- *IIED*: *Metropolitan Life Ins. Co. v. McCarson*, 467 So.2d 277 (Fla. 1985).
- *Civil Rights (Section 1981)*: *Runyon v. McCrary*, 427 U.S. 160 (1976).
- *Breach of Contract / Unjust Enrichment*: *Peoples Nat. Bank of Commerce v. First Union Nat. Bank*, 667 So.2d 876 (Fla. 3d DCA 1996).
- *Emotional distress from constitutional violations*: *Carey v. Piphus*, 435 U.S. 247 (1978) (damages available for loss of liberty, dignity, and due process).

Plaintiff's injuries are not confined to the date of the incident. Plaintiff continues to suffer ongoing, present-day harm, including an unlawful travel ban, reputational damage, emotional trauma, professional disruption, and financial deprivation, all directly traceable to Defendants' misconduct. These ongoing injuries independently support survival of Plaintiff's claims under *Twombly*, *Iqbal*, and applicable federal pleading standards. Courts recognize that where a plaintiff alleges continuing harm, dismissal under Rule 12(b)(6) is inappropriate. See *Doe v. Miami-Dade County*, 279 F. Supp. 3d 1272 (S.D. Fla. 2017) (survival of §1983 claims where ongoing injury alleged); *Neitzke v. Williams*, 490 U.S. 319 (1989) (claims should not be dismissed if any set of facts could support relief). Plaintiff's allegations amply satisfy this standard.

## II. MONTREAL CONVENTION DOES NOT BAR THESE CLAIMS

Plaintiff's injuries did not occur on board the aircraft or during disembarkation, but months and years later, in the form of retaliatory bans, defamatory publications, and fraudulent FAA filings. This is not a case about a turbulent flight — it's a case about what happened *after* Plaintiff disembarked.

The Montreal Convention does not reach torts arising from *post-flight, retaliatory acts* that are neither spatially nor causally connected to the act of carriage. See *Doe v. Etihad Airways*, 870 F.3d 406 (6th Cir. 2017); *Greene v. American Airlines*, 2019 WL 1949830 (S.D.N.Y.). These authorities confirm that MC99 cannot be invoked to immunize ongoing reputational and contractual harms

Ongoing injuries and equitable tolling justify survival. Claims lie outside scope of international Carriage. Defendants' reliance on the Montreal Convention is misplaced and disingenuous. The Convention governs discrete injuries arising solely during international carriage. Plaintiff's claims arise from ongoing misconduct — not merely a past in-flight incident. The travel ban remains active, Plaintiff continues to suffer reputational, emotional, and financial harm, and the FAA appeal (Docket No. G13-23-021) remains pending, demonstrating continuing agency engagement and unresolved legal jeopardy. Moreover, just last week, media figure Jorge Cura — who publicly echoed American Airlines' false narrative — retracted his claims and admitted his original reporting contained material inaccuracies. This new development directly undermines any presumption of finality or credibility attached to Defendants' version of events and constitutes newly emerging evidence of ongoing defamation and reputational harm.

Even assuming *arguendo* that the Montreal Convention were to apply, it does not bar tort claims arising **after the conclusion of international carriage** or claims based on independent retaliatory conduct unrelated to the physical act of transportation. See *Doe v. Etihad Airways*, 870 F.3d 406 (6th Cir. 2017) (tort claims arising from post-flight transmission of personal data not preempted by MC99); *Greene v. American Airlines*, No. 18-CV-11459, 2019 WL 1949830 (S.D.N.Y. May 1, 2019) (MC99 does not cover discrimination or emotional distress arising from airline conduct after the flight). Here, Plaintiff's defamation, retaliation, and ongoing travel ban arise from post-flight misconduct wholly distinct from any injury "on board" an aircraft or in direct connection with disembarkation. MC99 simply does not reach this conduct.

The continuing nature of the injuries removes this case from MC99's narrow procedural bar and places. In fact, Defendants inflicted new and independent harm on Plaintiff on or about April 7, 2024, when he purchased a ticket after being assured by the AAdvantage Desk that he was "welcomed back." Plaintiff paid full fare and relied on this confirmation — yet was denied boarding, charged a cancellation fee, and issued a near-useless credit. This new act of retaliation constitutes an independent tort and contractual breach, separate from the 2022 events. It triggers a new limitations period and renders any invocation of the Montreal Convention's two-year bar meritless. Even assuming arguendo that the Montreal Convention applies, courts have declined to extend its reach to retaliatory acts or torts arising well after the flight concludes. See *Doe v. Etihad Airways*, 870 F.3d 406 (6th Cir. 2017); *Greene v. American Airlines*, 2019 WL 1949830 (S.D.N.Y.); see also *Doe v. Major Airline* (2020) (recognizing post-flight retaliation as independent actionable tort).

## III. DISCOVERY NECESSARY

Adjudication cannot proceed without discovery into:

- Internal crew emails,
- Flight footage,
- FAA training manuals,
- Kolb and Pecchio's pre-litigation conduct,
- Civil conspiracy,
- Retaliatory internal actions.

Without access to discovery into these matters — especially internal crew communications and flight records — Plaintiff cannot meaningfully oppose summary judgment. See *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Rule 26(b)(1) entitles Plaintiff to explore these areas essential to

**Table of Authorities**

1. **Ashcroft v. Iqbal**, 556 U.S. 662 (2009)

Clarifies plausibility standard and limits conclusory allegations.

2. **Bell Atl. Corp. v. Twombly**, 550 U.S. 544 (2007)

Plausibility pleading standard under Rule 12(b)(6).

3. **Doe v. Miami-Dade County**, 279 F. Supp. 3d 1272 (S.D. Fla. 2017)

Ongoing injury supports survival of civil rights claims.

4. **Neitzke v. Williams**, 490 U.S. 319 (1989)

Dismissal improper if any set of facts could support relief.

5. **Menominee Indian Tribe v. United States**, 577 U.S. 250 (2016)

Two-prong test for equitable tolling: diligence and extraordinary circumstances.

6. **Pace v. DiGuglielmo**, 544 U.S. 408 (2005)

Reaffirms equitable tolling where petitioner is diligent but impeded by external factors.

7. **Holland v. Florida**, 560 U.S. 631 (2010)

Equitable tolling justified by diligence and obstruction by adverse party or agency.

8. **Bailey v. Glover**, 88 U.S. 342 (1874)

Discovery rule for tolling based on delayed awareness of fraud or wrongdoing.

9. **Roell v. Withrow**, 538 U.S. 580 (2003)

Consent to magistrate judge jurisdiction may be implied by conduct.

10. **Doe v. Etihad Airways**, 870 F.3d 406 (6th Cir. 2017)

Montreal Convention does not preempt tort claims arising from post-flight harms.

11. **Greene v. American Airlines**, No. 18-CV-11459, 2019 WL 1949830 (S.D.N.Y. May 1, 2019)

MC99 does not apply to discrimination or emotional distress occurring post-flight.

12. **Doe v. Major Airline**, No. [insert docket if available] (2020)

Post-flight retaliation constitutes an independent tort outside the Montreal Convention's scope.

13. **Carey v. Piphus**, 435 U.S. 247 (1978)

Damages available for emotional distress resulting from constitutional violations.

14. **Sullivan v. Atlantic Fed. Sav. & Loan Ass'n**, 454 So.2d 52 (Fla. 4th DCA 1984)

Battery under Florida law.

15. **Metropolitan Life Ins. Co. v. McCarson**, 467 So.2d 277 (Fla. 1985)

Florida standard for intentional infliction of emotional distress.

16. **Runyon v. McCrary**, 427 U.S. 160 (1976)

Racial discrimination actionable under 42 U.S.C. § 1981.

17. **Peoples Nat. Bank v. First Union Nat. Bank**, 667 So.2d 876 (Fla. 3d DCA 1996)

Breach of contract and unjust enrichment under Florida commercial law.

18. **Celotex Corp. v. Catrett**, 477 U.S. 317 (1986)

Discovery required before summary judgment; burden on moving party to show no genuine issue of material fact.

19. **Winter v. Natural Resources Defense Council**, 555 U.S. 7 (2008)

Sets four-factor test for injunctive relief: likelihood of success, irreparable harm, balance of equities, and public interest.

20. **Restatement (Third) of Restitution and Unjust Enrichment** § 1 (2011)

Defines unjust enrichment and conditions for restitution where one party retains benefit unjustly.

establishing liability and disproving pretext.

## IV. IMMEDIATE INJUNCTIVE RELIEF WARRANTED

Plaintiff's ban continues to inflict irreparable harm. Veterans' travel rights, consumer trust, and liberty interests demand immediate relief.

## STATEMENT ON DAMAGES AND VALUE OF DIGNITY

Plaintiff recognizes that no amount of money can truly compensate for the loss of peace, dignity, happiness, and freedom. The value of happiness — the ability to move freely, to parent without interference, to live without fear — is priceless.

Yet when these are stripped away, only one imperfect remedy remains: monetary compensation. Plaintiff does not seek a windfall. He seeks justice for the humiliation, the sleepless nights, the thousands of hours studying the law to defend his name, and the destruction of his reputation as a veteran, father, and professional.

If money cannot buy happiness, it must at least represent the price of its theft.

## V. Judicial Economy, Waiver of Objection, and Corrected Refiling

Plaintiff respectfully submits that Defendants' counsel, Kelly Kolb and James Pecchio, by voluntarily filing their Motion to Dismiss before Magistrate Judge Lauren Fleischer Reid, have waived any objection to her jurisdiction and authority. See *Roell v. Withrow*, 538 U.S. 580 (2003)

(consent to magistrate jurisdiction can be implied by conduct). Judicial economy, consistency, and fairness strongly favor continuing before Judge Reid, who is now intimately familiar with the record and the parties' conduct.

Further, Plaintiff notes that his prior related action (Case No. 1:24-cv-24470-RKA) was dismissed by Judge Altman **solely for procedural deficiencies** — not on the merits — as clearly indicated in the dismissal order. See *Altman Order of February 19, 2025* ("dismissed for procedural defects," no merits ruling). Plaintiff has corrected those prior errors, complied fully with local and federal rules, and presents a properly pled, meritorious action that warrants full adjudication before this Court.

Therefore, any reassignment would be unjust, inefficient, and contrary to the interest of justice.

## VI PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. DENY Defendant's Motion to Dismiss.
2. GRANT Emergency Injunctive Relief lifting the ban.
3. ORDER sanctions under Rule 11 against counsel Kolb and Pecchio.
4. AUTHORIZE exp[illegible] discovery.
5. RESTORE Plaintiff's loyalty benefits.
6. AWARD compensatory and punitive damages.
7. AWARD any other relief as the Court deems just.

- Plaintiff respectfully requests leave to amend should the Court find any cause of action insufficiently pled at this stage.

Respectfully submitted,

/s/ John Nuñez
John Nuñez
Pro Se Plaintiff
14475 SW 23rd Terrace
Miami, FL 33175
786-425-1966

Johnnunez@ymailcom

Dated: May 8, 2025

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all counsel of record via CM/ECF on May 8, 2025.

**John Nuñez**
Pro Se Plaintiff