UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:25-21630-CIV-ALTMAN/Reid

JOHN NUNEZ

      Plaintiff, *pro se*,

v.

AMERICAN AIRLINES, INC.,

      Defendant.

_____/

## REPORT AND RECOMMENDATION GRANTING DEFENDANT'S MOTION TO DISMISS

**THIS CAUSE** is before the Court on Defendant American Airline, Inc.'s ("Defendant") Motion to Dismiss (the "Motion). [ECF No. 17]. The Honorable Roy K. Altman referred this matter to the undersigned for a report and recommendation. [ECF No. 28]. Plaintiff filed a Response to the Motion to Dismiss [ECF No. 22]; Defendant filed its Reply [ECF No. 30].[1] Upon review of the pleadings, it is **RECOMMENDED** that the Motion to Dismiss [ECF No. 17] be **GRANTED** and Plaintiff's Complaint be **DISMISSED WITH PREJUDICE**.

---

[1] The Court notes that Plaintiff's Response contained briefing and arguments related to matters other than Defendant's Motion to Dismiss. *See* [ECF No. 22]. These ancillary briefings were stricken by the Court except for Plaintiff's incorporated response to the Motion to Dismiss. *See* [ECF No. 29]. Thus, the undersigned will only consider arguments in the briefing relating to Plaintiff's Response to Defendant's Motion to Dismiss.

The Court also notes that Plaintiff has made several other filings purporting to supplement his Response. The Court has stricken some of these filings and not yet ruled on the others. Per Judge Altman's May 16, 2025 Order, Plaintiff's original opposition brief [ECF No. 22] will "remain as the Plaintiff's response to the Motion to Dismiss." [ECF No. 29]. The Court has also stated, "[w]e didn't—and won't—allow the Plaintiff to file another response." [ECF No. 39].

# I.     <u>BACKGROUND</u>

This case arises out of an incident alleged to have occurred on June 3, 2022, onboard American Airlines Flight 1124 from Barranquilla, Colombia to Miami, Florida ("Flight 1124"). [ECF No. 17 at 9]. This is Plaintiff's second attempt at filing suit for the Flight 1124 incident. [*Id.*]. Plaintiff's previous action before this Court was dismissed without prejudice due to Plaintiff's multiple failures to comply with the Court's Local Rules. [*Id.*]; *see also Nunez v. American Airlines, Inc.*, 1:24-cv-24470-RKA, [ECF No. 36] (Order Dismissing Case). Plaintiff also appears to have instituted another action in this Court related to the administrative proceedings before the Federal Aviation Administration (the "FAA"). *See Nunez v. Federal Aviation Administration*, 1:25-cv-22808-JG.

Plaintiff alleges he was a passenger on Defendant's international Flight 1124 traveling from Colombia to Miami on June 3, 2022. [ECF No. 1 ¶ 5]. Plaintiff alleges to have been traveling as a "D3 non-revenue pass traveler." [*Id.*]. Upon boarding, Plaintiff claims he asked to use the forward lavatory on the plane due to a medical condition. [*Id.* ¶ 8]. Plaintiff was denied access to the forward lavatory by the flight attendant, explaining that it was restricted to business class passengers. [*Id.*]. According to Plaintiff, another flight attendant "publicly disclosed [his] D3 status in front of other passengers" and claimed he was being "difficult" and "argumentative." [*Id.*]. Following the incident, Plaintiff was removed from the flight by the captain. [*Id.* ¶ 9]. Plaintiff was escorted off the plane and the incident were allegedly "recorded and widely shared on social media." [*Id.* ¶10].

Following the incident, Plaintiff's travel privileges were revoked by American Airlines and administrative proceedings were instituted against him by the FAA. [*Id.* ¶ 11]; [*Id.* at 75]. After a hearing before an Administrative Law Judge ("ALJ"), Plaintiff alleges the ALJ rejected the FAA's

proposed fine and reduced the charge. [*Id.* ¶ 11]. Plaintiff also alleges that American Airlines reinstated his travel privileges following the ALJ hearing. [*Id.* ¶ 12]. As a result, Plaintiff purchased a plane ticket on American Airlines Flight 2280 ("Flight 2280") for an April 7, 2025 flight from Miami to Orlando. [*Id.* ¶ 12]. However, Plaintiff was denied boarding at the airport and was told his travel ban was still in place from the previous Flight 1124 incident. [*Id.*].

Plaintiff filed his first action regarding the Flight 1124 incident on November 13, 2024, which was dismissed without prejudice on February 19, 2025. *See Nunez v. American Airlines, Inc.*, 1:24-cv-24470-RKA, [ECF Nos. 1, 36]. Plaintiff filed the instant Action on April 9, 2025. [*Id.*].

Plaintiff brings claims for Breach of Contract (Count I), Intentional Infliction of Emotional Distress ("IIED") (Count II), Defamation (Count III), Violation of 42 U.S.C. § 1981 ("Section 1981") (Count IV), Negligent Misrepresentation and Failure to Train (Count V), and Injunctive Relief (Count VI). [ECF No. 17 ¶ 4]. Plaintiff alleges several injuries suffered from the events of Flight 1124, which include post-traumatic stress disorder, onset of compulsive behavior such as trichotillomania (eyebrow pulling), anxiety and depression, as well as reputational, professional, economic, and familial harms. [ECF No. 1 at 15–17].

## II.    LEGAL STANDARD

In reviewing the allegations of a complaint at the motion-to-dismiss-stage, a court must take all of plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347 (11th Cir. 2016). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 . . . does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) ("Because this case comes to us at the motion-to-dismiss stage, the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom.") (quoting *Ashcroft*, 556 U.S. at 678–79).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Yet, where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See Twombly*, 550 U.S. at 557. "[T]he standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

While factual assertions are to be drawn in favor of the plaintiff, the same does not go for legal conclusions. *Iqbal*, 556 U.S. at 678. Therefore, a complaint must offer more than "[t]hreadbare recitals of the elements of a cause of action." *Id.* Indeed, a "formulaic recitation of the elements of a cause of action" that are "supported by mere conclusory statements, do not suffice." *Id.*

Lastly, courts are more lenient to *pro se* filings than those drafted by practicing attorneys. *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014) (citing *Haines v. Kerner*, 404

U.S. 519, 520 (1972)). But a court and its staff cannot serve as "*de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell*, 760 F.3d at 1168 (citation and quotation marks omitted).

### III.   DISCUSSION[2]

**(i)   Plaintiff's claims are barred by the Montreal Convention.**

Defendant first argues that Plaintiff's claims are barred by the Montreal Convention (the "Convention"). [ECF No. 17 at 11–17]. The Montreal Convention is a multilateral international treaty that was enacted to create uniform rules "governing claims from international air transportation." *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 169 (1999).[3] Accordingly, "when the Montreal Convention applies, it provides the exclusive means for passengers to seek damages." *Pettaway v. Miami Air Int'l*, 624 F. Supp. 3d 1268, 1276 (M.D. Fla. 2002). The Convention applies to "all international carriage of persons, baggage, or cargo performed by an aircraft for reward." Montreal Convention, art. 1. Specifically, Article 29 of the Convention provides:

> In the carriage of passengers, baggage and cargo, **any action for damages**, however founded, **whether under this Convention or in contract or in tort or otherwise**, can only be brought subject to the conditions and such limits as are set

---

[2] The Court notes that Plaintiff's Response [ECF No. 22] appears to raise new causes of action not alleged in the Complaint. This is improper, and these extraneous claims/arguments will not be considered. *See Brahim v. Holder*, No. 13-23275-CIV-COHN, 2014 WL 2918598, *4 (S.D. Fla. June 26, 2014) ("[A] plaintiff may not amend his Complaint in a response to a motion to dismiss.").

[3] While *Tseng* involved the Warsaw Convention (the predecessor to the Montreal Convention), it is still instructive here and courts have utilized cases interpreting the Warsaw Convention "where the equivalent provision of the Montreal Convention is substantively the same." *Pettaway v. Miami Air Int'l, Inc.*, 624 F. Supp. 3d 1268, 1276 n.4 (M.D. Fla. 2022); *see also Ugaz v. American Airlines*, 576 F. Supp. 2d 1354, 1360 ("[I]t is appropriate to rely on cases interpreting the Warsaw convention where the equivalent provision of the Montreal Convention is substantively the same."). Here, Articles 17 and 24 of the Warsaw Convention are almost identical to Articles 17 and 29 of the Montreal Convention. *Compare* Warsaw Convention, arts. 17, 24, *with* Montreal Convention, arts. 17, 29.

out in this Convention without prejudice as to who are the persons who have the right to bring suit and what are their respective rights.

Montreal Convention, art. 29 (emphasis added). Therefore, "the Montreal Convention preempts state law claims falling within its scope." *Hedetniemi v. American Airlines, Inc.*, No. 18-CV-21822, 2018 WL 7824483, at * 2 (S.D. Fla. Nov. 7, 2018). If a plaintiff's claim "falls within the treaty's ambit, the treaty provides the sole cause of action for redress." *Id.*; *see also Ugaz v. American Airlines*, 576 F. Supp. 2d 1354, 1360 (S.D. Fla. 2008) ("For all air transportation to which the Montreal Convention applies, if an action for damages falls within one [of] the treaty's damage provisions, then the treaty provides the sole cause of action under which a claimant may seek redress for his injuries."). Moreover, "[t]he treaty precludes passengers from bringing actions under local law [even] when they cannot establish air carrier liability under the treaty."[4] *Tseng*, 525 U.S. at 174; *see also Atia v. Delta Airlines*, Inc., 692 F. Supp. 2d 693, 702 (E.D. Ky. 2010) ("[A]lthough the plain language of Article 17 limits recovery to passengers who have sustained

---

[4] The Court notes that Article 17 of the Montreal Convention prescribes liability for carriers in cases of passenger death or "bodily" injury. *See* Montreal Convention, art. 17. Here, it is unclear whether Plaintiff is alleging bodily injury as his initial Complaint asserts claims largely relating to psychological, reputational, and economic injury. *See generally* [ECF No. 1]. However, his later filings appear to (improperly) try to add claims relating to bodily injury. *See* [ECF No. 22 at 4 (Plaintiff's response to Defendant's Motion to Dismiss alleging battery for the first time)]. Regardless, the Montreal Convention would still apply here. The Convention preempts all personal injury actions for damages arising onboard an international flight, even those that do not satisfy Article 17's bodily liability provisions. *See Tseng*, 525 U.S. at 156 (1999) (preempting claim for psychological injury and stating the Convention "precludes a passenger from maintaining an action for personal injury damages under local law [even] when her claim does not satisfy the conditions for liability under the Convention"); *see also King v. Am. Airlines, Inc.*, 284 F.3d 352, 359 (2d Cir. 2002) (interpreting *Tseng* and stating "[A]lthough the [plaintiffs] would not be able to maintain an action under Article 17 for non-bodily injuries stemming from the discriminatory bumping, their claim is [nevertheless] preempted if it arose from events that took place during [international] embarkation.").

'bodily injury,' that article nevertheless preempts any action for passenger injury suffered on board an aircraft or while embarking or disembarking, regardless of whether bodily injury has been alleged.").

Thus, based on a whole reading of the Convention, recovery for an injury suffered onboard an international aircraft (or while embarking or disembarking), "if not allowed under the Convention, is not available at all." *Tseng*, 525 U.S. at 161. In other words, if a claim for injury (bodily or non-bodily) stems from an international flight, it is only recoverable under the Montreal Convention. *See Tseng*, 525 U.S. at 156 (1999); *King*, 284 F.3d at 359; *Atia*, 692 F. Supp. 2d at 702; *Hicks v. Avianca Inc.*, No. 22-23941-CV, 2023 WL 4743037, at *3 (S.D. Fla. July 25, 2023) ("As set forth in Article 29, '*any action for damages*' relating to the [international] carriage of passengers must be brought under one of the Montreal Convention's damages provisions.").

Here, Plaintiff brings four state law claims (Counts I–III, V), one federal statutory claim (Count IV), and one claim for injunctive relief (Count VI) based on alleged injuries occurred onboard an international flight. Therefore, the Montreal Convention would govern Plaintiff's right to relief for his alleged injuries, and precludes claims brought under state and federal law.[5]

    a.   The Montreal Convention preempts Plaintiff's common law claims for IIED, Defamation, and Negligent Misrepresentation/Failure to Train (Counts II–III and V).

Here, Plaintiff's claim for IIED (Count II), Defamation (III), and Negligent Misrepresentation/Failure to train (Count V) all stem from the international Flight 1124 incident from Colombia to Miami on June 3, 2022. Indeed, the allegations in the Complaint underlying

---

[5] The United States and Colombia are signatories to the Montreal Convention. *See Convention for the Unification of Certain Rules for International Carriage by Air*, Int'l Civ. Aviation Org. (May 28, 1999), https://www.icao.int/secretariat/legal/list%20of%20parties/mtl99_en.pdf.

Counts II, III, and V all involve actions pursuant to the "carriage of passengers" from the international flight. *See* Montreal Convention art. 29.

For example:

- In support of Count II (IIED) the Complaint states: "Defendant's employees knowingly escalated a benign bathroom request into a public spectacle . . . constitut[ing] outrageous conduct" [ECF No. 1 ¶¶ 20, 23]. This event occurred on Flight 1124 on June 3, 2022.

- In support of Count III (Defamation) the Complaint states: "Defendant, through its agents, made multiple false and damaging statements about Plaintiff, including claims that he was 'disruptive,' had an 'argumentative tone[.]'" [*Id.* ¶ 25]. These alleged defamatory statements occurred during or as a result of the incident on Flight 1124 on June 3, 2022.

- In support of Count V (Negligent Misrepresentation and Failure to Train) the Complaint states: "[The flight attendant] misrepresented federal aviation law by asserting the use of business-class lavatory by main cabin passengers was prohibited by federal law . . . [the] misstatement was repeated to the captain, causing a cascading misjudgment that resulted in Plaintiff's removal." [*Id.* ¶¶ 35–36]. These actions occurred onboard Flight 1124 on June 3, 2022.

Each of these common law tort claims arise from and have their origin on the international Flight 1124 from Colombia to Miami. As such, they must be brought under the Montreal Convention and are therefore preempted as pleaded here. *See Hicks*, 2023 WL 4743037, at *3 (noting breach of contract and negligence claim brought from international flight would be preempted by Montreal Convention); *Pettaway*, 624 F. Supp. 3d at 1281–82 (collecting cases

dismissing state law claims due to Montreal Convention preemption); *Omolu v. Delta Air Lines, Inc.*, No. 1:12-CV-2820-WSD, 2013 WL 12061846 (N.D. Ga. June 26, 2013) (dismissing intentional infliction of emotional distress claim with prejudice as preempted by Montreal Convention).

Plaintiff argues that his claims are not defeated by preemption because the "injuries did not occur on board the aircraft or during disembarkation, but months and years later, in the form of retaliatory bans, defamatory publications, and fraudulent FAA filings." [ECF No. 22 at 12]. Plaintiff attempts to paint his damages as "fresh, independent harms inflicted in 2024 and 2025" that occurred after the flight. [*Id.* at 2]. These arguments are misplaced and incorrect.

Whether a claim falls within the scope of the Montreal Convention is premised on "when the injury-causing *event* occurs, not when the *injury* is suffered." *Omolu*, 2013 WL 12061846, at *3; *see also Pflug v. Egyptair Corp.*, 961 F.2d 26, 29–30 (2d Cir. 1992) (applying Warsaw Convention where "*accident* occurred in the aircraft" and not "put[ting] any limitation on where the injuries can have occurred."); *We CBD, LLC v. Planet Nine Priv. Air, LLC*, 109 F.4th 295, 306 (4th Cir. 2024) ("The plain language of [the Montreal Convention] makes it apparent that 'the event' must occur during the carriage by air–not the damage."). As previously explained, Counts II, III, and V all originate and stem from the Flight 1124 incident. Therefore, they would fall squarely within the scope of the Montreal Convention and be preempted.[6]

---

[6] Plaintiff also incorrectly cites to *Doe v. Etihad*, 870 F.3d 406 (6th Cir. 2017), for the propositions that "post-transmission of personal data [is] not preempted by [the Montreal Convention]" and that "courts have declined to extend its reach to retaliatory acts or torts arising well after the flight concludes." [ECF No. 22 at 13–14]. This is plainly wrong and not what the case is about. *Etihad* involved the application of the Montreal Convention to nonphysical injuries arising from a passenger being pricked by a hypodermic needle on an international flight. *See Etihad*, 870 F.3d at 411. Indeed, the court in *Etihad* even notes that "the parties agree that Article 17(1) of the Montreal Convention . . . provides Plaintiffs' *only* avenue for recovery[.]" *Id.* (emphasis added).

As such, the undersigned recommends that Counts II, III, and V be **DISMISSED**.

      b.   <u>Plaintiff's Section 1981 claim (Count IV) is preempted</u>.

Similarly, Plaintiff's Count IV claim pursuant to 42 U.S.C. § 1981 is preempted by the Montreal Convention. Plaintiff alleges that he was treated differently "based on appearance, perceived ethnicity, and non-revenue status" and thus argues he states a claim for discrimination under 42 U.S.C. § 1981. [ECF No. 1 ¶¶ 30–34]. However, again, this claim is preempted by the Montreal Convention. The Convention states: "In the carriage of passengers, baggage and cargo, *any action for damages, however founded*, whether under this Convention or in contract or in tort *or otherwise*, can only be brought subject to the conditions and such limits of liability as are set out in this Convention." Montreal Convention, art. 29 (emphasis added). Thus, the Convention is the exclusive remedy for claims onboard an international flight, "however founded." *Id.*

Here, Plaintiff's § 1981 claim arises from conduct onboard the international Flight 1124. *See* [ECF No. 1 ¶¶ 30–34]. The claim is ostensibly for damages. [*Id.* at 16]. It is preempted. *See Nobre v. Am. Airlines*, No. 09-61170-CIV, 2009 WL 5125976 (S.D. Fla. Dec. 21, 2009) (dismissing § 1981 claim as preempted by Montreal Convention); *King*, 284 F.3d at 361–362 (dismissing discrimination claim as preempted by Warsaw Convention); *Kripalani v. AMR Corp.*, No. 12 CIV. 5609 KBF, 2013 WL 1822777, at *3 (S.D.N.Y. Apr. 30, 2013) ("Here, plaintiff's tort, discrimination, human rights, and Constitutional claims all arise from physical and emotional injuries suffered during international flight and are therefore preempted by the [Montreal] Convention."); *Mizyed v. Delta Airlines, Inc.*, No. CIV.A. 12-382, 2012 WL 1672810, at *3 (E.D. La. May 14, 2012) (preempting discrimination claim where "complaint clearly alleges that his damage occurred during the course of embarking/disembarking for purposes of Article 17 of the Montreal Convention."); *Atia*, 692 F. Supp. 2d at 702 (same); *Gibbs v. Am. Airlines, Inc.*, 191 F.

Supp. 2d 144, 149 (D.D.C. 2002) (dismissing suit under Warsaw Convention "[b]ecause the court finds that discrimination statutes are 'local laws' preempted under the Convention in order to achieve uniformity in liability amongst Convention signatories[.]").

Thus, Plaintiff's Count IV § 1981 claim should be **DISMISSED**.

c.  <u>Plaintiff's Breach of Contract claim (Count I) is preempted</u>

Lastly, the Montreal Convention also preempts Plaintiff's Count I claim for Breach of Contract. Plaintiff claims that he purchased a plane ticket on April 7, 2025 after receiving a letter from American Airlines purportedly reinstating his flight privileges. *See* [ECF No. 1 ¶¶ 12–13, 15–19, 56]. As such, based on the letter stating, "[w]e . . . look forward to welcoming you on board your next American Airlines flight," Plaintiff believed that he was no longer banned and had his flight privileges reinstated. *See* [*Id.* at 76, ¶¶ 15–19]. Nevertheless, Plaintiff alleges he was later denied boarding at the airport, because he was still banned by American Airlines. [*Id.* ¶ 17].

Defendant argues that this claim would also be preempted by the Montreal Convention as it is "inextricably intertwined" with the events that allegedly occurred on Flight 1124. [ECF No. 17 ¶ 18]. Plaintiff on the other hand, again argues that his injuries occurred after the flight, including this "fresh, independent harm[] inflicted in . . .2025" after he purchased his ticket. [ECF No. 1 at 2, 11–12]. However, again, the scope of the Montreal Convention is based on "when the injury-causing *event* occurs, not when the *injury* is suffered." *Omolu*, 2013 WL 12061846, at *3. Further, courts have interpreted the scope of the Convention by "[a]ssessing the causal chain as a whole," and do not take an "overly segmented approach in identifying the causal event." *Planet Nine Private Air, LLC*, 109 F.4th 295 at 304 (affirming preemption of plaintiff's claim even when damages arising from destruction of cargo arose months after the cargo was seized from an international flight).

Here, the original injury causing event occurred on Flight 1124 on June 3, 2022. [ECF No. 1 ¶ 5]. Plaintiff's actions onboard Flight 1124 caused American Airlines to revoke his flight privileges. [*Id.* at 15]. Later, after continuing to communicate with American Airlines about the events of Flight 1124, Plaintiff mistakenly believed his flight privileges were reinstated. [*Id.* at 76]. He was then denied boarding due the continued ban from the Flight 1124 incident. [*Id.* ¶¶ 15–19]. These later injuries all stem from the initial Flight 1124. Indeed, Plaintiff himself admits this by stating his latest injury was a "*continuation* of the pattern of retaliatory conduct that *began* on Flight 1124." [*Id.* ¶¶ 56] (emphasis added). Thus, Plaintiff's Count I breach of contract claim "necessarily and inextricably arise[s] from events that occurred during the carriage by air"— namely, Plaintiff's removal from the plane and subsequent ban by American Airlines. *See Planet Nine Private Air, LLC*, 109 F.4th 295 at 304; *see also Tavantzis v. Am. Airlines, Inc.*, No. 23-CV-05607-BLF, 2024 WL 5446322, *10 (N.D. Cal. July 19, 2024) (finding later arising breach of contract claim preempted by Montreal Convention where it was "inextricably intertwined with the injury they experienced" on the initial injury-causing international flight). Plaintiff's Count I Breach of Contract claim is preempted by the Montreal Convention and should be **DISMISSED**.

Plaintiff's claims are completely preempted by the Montreal Convention and due to be dismissed. [7] Therefore, the undersigned does not address the merits of Plaintiff's claims at this time.  *See Surgery Ctr. of Viera, LLC v. Cigna Health & Life Ins. Co.*, No. 6:22-CV-393-JA-LHP, 2023 WL 5353461, at *2 (M.D. Fla. Aug. 21, 2023) ("The Court agrees that . . . preemption applies,

---

[7] Plaintiff's Count VI claim for Injunctive Relief also fails because it cannot be pleaded as a standalone claim. *See Rubinstein v. Keshet Inter Vivos Tr.*, No. 17-61019-CIV, 2018 WL 3730875, at *7 (S.D. Fla. June 11, 2018), *report and recommendation adopted sub nom. Rubenstein v. Keshet Inter Vivos Tr.*, No. 17-61019-CIV, 2018 WL 3730867 (S.D. Fla. June 27, 2018) (collecting cases and dismissing injunctive relief count because it is "merely a remedy" and not an actual claim).

so it does not address the merits of the claims."). However, the Court does note that Plaintiff's claims appear substantively vulnerable to Defendant's arguments and that Plaintiff did not specifically oppose these arguments in his response. *See Hebert v. Deutsche Bank Nat'l Tr. Co.*, No. 8:21-CV-626-SPF, 2021 WL 11713689, at *1 (M.D. Fla. Apr. 30, 2021) (collecting cases and stating, "[c]ourts in this district regularly deem claims abandoned where a plaintiff raises the claim in a complaint, but then fails to defend it in opposition to a motion to dismiss."); *see also Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) ([A] claim may be considered abandoned when the allegation is included in the plaintiff's complaint, but [the plaintiff] fails to present any argument concerning this claim to the district court.").

**(ii)  Dismissal with prejudice due to statute of limitations**.

Defendant requests that Plaintiff's Complaint be dismissed with prejudice due to futility of amendment. [ECF No. 17 at 8–9]. Namely, they posit that Plaintiff's claims are only actionable under the Montreal Convention, and that the Convention has a two-year statute of limitations from the arrival of the subject flight. [*Id.*]; *see also* Montreal Convention, art. 35 ("[T]he right to damages shall be extinguished if an action is not brought within a period of two years, reckoned from the date of arrival at the destination, or from the date on which the aircraft ought to have arrived, or from the date on which the carriage stopped.").

Courts have interpreted the statute of limitations period as commencing when the injury-causing flight occurred, not when damage from the flight was felt. *See Narayanan v. Brit. Airways*, 747 F.3d 1125 (9th Cir. 2014) (two-year statute of limitations period for wrongful death claim began when international flight arrived at destination, not when passenger died six-months later). Moreover, there is no equitable tolling of the statute of limitations period under the Convention.

*See Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1175 (11th Cir. 2014) ("Courts have refused to apply local tolling rules to [Montreal] Convention claims.") (citing *Hussmann v. Trans World Airlines, Inc.,* 169 F.3d 1151, 1154 (8th Cir.1999); *Fishman v. Delta Air Lines, Inc.,* 132 F.3d 138, 143–45 (2d Cir.1998)); *see also Narayanan*, 747 F.3d at 1132 ("[T]he prevailing view among courts across jurisdictions is that the Montreal Convention's limitations period operates as a condition precedent to suit and, as such, is not subject to equitable tolling.").

Here, Flight 1124 departed Colombia on June 3, 2022 and was scheduled to arrive in Miami the same day. [ECF No. 1 ¶ 5]. Thus, the Montreal Convention statute of limitations period would have begun to run on June 3, 2022 and expired on June 3, 2024. Plaintiff filed this action on April 9, 2025. [*Id.*]. Therefore, Plaintiff is untimely. And, even if Plaintiff were to amend his claims to bring them pursuant to the Montreal Convention, he would still be untimely. Plaintiff's claims should be dismissed with prejudice as futile. *See Hicks*, 2023 WL 4743037, at *3 (dismissing state law claims with prejudice due to preemption and futility under the Montreal Convention); *Maglana v. Celebrity Cruises Inc.*, No. 20-22133-CIV, 2023 WL 4926055, at *2 (S.D. Fla. June 30, 2023), *aff'd*, 136 F.4th 1032 (11th Cir. 2025) ("Additionally, 'a court may dismiss a case with prejudice when [an] amendment would be futile.'") (citing *Chiron Recovery Ctr., v. United Healthcare Servs., Inc.*, 438 F. Supp. 3d 1346, 1356 (S.D. Fla. 2020)).

Therefore, the undersigned recommends that Plaintiff's claims be **DISMISSED WITH PREJUDICE**.

**(iii)    Plaintiff's violations of the Local Rules and submission of fake caselaw**.

Lastly, the undersigned would like to note Plaintiff's repeated violations of this Court's Local Rules, as well as his submission of fake caselaw to the Court.

Plaintiff has been repeatedly cautioned of the importance of following this Court's Local Rules and admonished for his failure to do so. His first attempt to bring suit was dismissed by Judge Altman for **repeated** failures to abide by the Local Rules and orders from the Court. *See Nunez v. American Airlines, Inc.*, 1:24-cv-24470-RKA, [ECF No. 36] (Order Dismissing Case). Plaintiff appears to not have learned from his previous dismissal and has continuously inundated the Court's docket with improper filings, after being **explicitly** warned not to do so. *See* [ECF No. 29 (order striking Plaintiff's filings, allowing first response to Defendant's Motion to Dismiss to stand, and warning Plaintiff he must comply with Local Rules with filings which include proper conferral certifications)]; *see also* [ECF No. 39 (order striking certain of Plaintiff's filings, noting that previous order "otherwise allowed [Plaintiff's first response] to 'remain as the Plaintiff's response to the Motion to Dismiss' . . . [and not allowing] Plaintiff to file another response[,]" and warning Plaintiff again that he must comply with the Local Rules or otherwise face sanctions which may include dismissal)]; [ECF No. 40 (Plaintiff's motion for leave without certificate of conferral)]; [ECF No. 33 (Plaintiff's improper sur-reply masquerading as a "Notice")]; [ECF No. 42 (Plaintiff's improper second "Response" to Defendant's Motion to Dismiss despite previous orders warning against such filing)]; [ECF No. 49 (Plaintiff's improper "Unilateral Rule 26(f) Discovery Report and Case Management Statement")].  These repeated and flagrant violations of the Court's Local Rules and explicit orders warrant dismissal in and of themselves. *See Class v. U.S. Bank Nat'l Ass'n*, 734 Fed. App'x. 634, 635 (11th Cir. 2018) ("A district court has authority to dismiss actions for failure to comply with local rules.") (citing *Kilgo v. Ricks*, 983 F.2d 189, 192 (11th Cir. 1993)); *see also* Fed. R. Civ. P. 41(b).

More strikingly, however, it appears that Plaintiff has submitted fake caselaw to this Court in his response to Defendant's Motion to Dismiss. *See* [ECF No. 22 at 13–14 (citing fake caselaw:

*Greene v. American Airlines*, No. 18-CV-11459, 2019 WL 1949830 (S.D.N.Y. May 1, 2019) and
*Doe v. Major Airline* (2020)]. As noted by Defendant, and as confirmed by a search conducted by
the undersigned, the cases *Greene v. American Airlines* and *Doe v. Major Airline* do not exist.
They were cited by Plaintiff to support his argument that Montreal Convention preemption does
not apply to his claims. *See* [ECF No. 22 at 12–13]. Plaintiff responds to this in his improper sur-
reply by largely attacking Defendant for pointing it out, and by attempting to brush off the usage
as an "unintentional and correctable . . . formatting or citation error." [ECF No. 33 at 3].

        The undersigned is not convinced that such citations were "unintentional" and should be
treated so flippantly. *See Versant Funding LLC v. Teras Breakbulk Ocean Navigation Enters.,
LLC*, No. 17-CV-81140, 2025 WL 1440351, at *7 (S.D. Fla. May 20, 2025) ("The Court takes the
submission of a hallucinated, fake case citation supposedly supporting a principle of law very
seriously. It is a serious misrepresentation to the Court and to opposing counsel.").

         First, Plaintiff has not corrected the citations he claims he unintentionally "misnamed,"
nor can the undersigned find any other case cited by Plaintiff that would even somewhat resemble
one of the fake cases: *Greene v. American Airlines*. *See O'Brien v. Flick*, No. 24-61529-CIV, 2025
WL 242924, at *5 (S.D. Fla. Jan. 10, 2025) (noting plaintiff's explanation for fake citations lacked
credibility where no "other legitimate case he cite[d] resemble[d] the fake cases in any way that
might conceivably have made such a mix-up possible."). Moreover, Plaintiff cited these cases
multiple times throughout his response (with explanatory parentheticals), further dispelling the
notion that this was simply a one-off minor error. *See* [ECF No. 22 at 13–14, 16]. Indeed, the "use
of non-existent case citations and fake legal authority generated by artificial intelligence programs
has been the topic of many published legal opinions and scholarly articles as of late. Courts that
have addressed the practice consistently agree that the use of fake legal authority is problematic

and warrants sanctions." *O'Brien*, 2025 WL 242924, at *6. As further explained by Judge Damian in *O'Brien*, the use of fake cases not only wastes the Court and opposing party's time and resources, but also creates "potential harm to the reputation of judges and courts whose names are falsely invoked." *Id.* Plaintiff's status as *pro se* does not absolve him of his duty of candor to the Court. *See Kendrick v. Sec'y, Florida Dep't of Corr.*, 21-12686, 2022 WL 2388425, at *3 (11th Cir. July 1, 2022) ("[w]hile it is true *pro se* pleadings are held to a less strict standard than counseled pleadings and are liberally construed . . . [*pro se* litigants] also owe the same duty of candor to the court as imposed on any other litigant."). Plaintiff's error is also exacerbated by the number of times he has been before this Court. In other words, he should know better.

Plaintiff's submission of fake caselaw warrants sanctions. *See O'Brien*, 2025 WL 242924, at *6–7 (dismissing case as a sanction for, among other things, submitting fake case law to the Court); *Thomas v. Pangburn*, CV423-046, 2023 WL 9425765, at *4–5 (S.D. Ga. Oct. 6, 2023) (dismissing case as sanction where "[p]laintiff did not explain what sources he relied on during his research or where he found the sham cases."), *report and recommendation adopted*, 4:23-CV-46, 2024 WL 329947 (S.D. Ga. Jan. 29, 2024); *Kruse v. Karlen*, 692 S.W.3d 43, 48 (Mo. Ct. App. 2024), *reh'g and/or transfer denied* (Apr. 9, 2024) (sanctioning *pro se* litigant who submitted false citations by imposing a $10,000 fine); *see also Morgan v. Cmty. Against Violence*, No. 23 Civ. 353-WPJ/JMR, 2023 WL 6976510, at *7 (D.N.M. Oct. 23, 2023) (explaining that although courts make "some allowances for [a] *pro se* Plaintiff's failure to cite to proper legal authority, courts do not make allowances for a Plaintiff who cites to fake, nonexistent, misleading authorities.") (cleaned up).

Plaintiff's case was previously dismissed without prejudice for violations of the Local Rules and for his failure to follow the Court's orders. *See Nunez v. American Airlines, Inc.*, 1:24-

cv-24470-RKA, [ECF No. 36] (Order Dismissing Case). He has also been warned many times in this case that he must follow the Local Rules and the Court's orders. *See* [ECF Nos. 29, 39].

As such, in light of Plaintiff's willful repeated violations of the Local Rules, paired with his submission of fake caselaw to the Court, the undersigned recommends that the Complaint be also **DISMISSED WITH PREJUDICE** as a sanction. *See Baltimore v. Jim Burke Motors, Auto.*, 300 F. App'x 703, 707 (11th Cir. 2008) ("Here, the court properly dismissed the case [with prejudice] as a sanction for Baltimore's repeated refusal to comply with the court's orders. Despite numerous warnings and many opportunities to comply, Baltimore failed to submit discovery, pay sanctions, or respond to orders."); *Germany v. City of Huntsville*, No. 23-10907, 2024 WL 126816, at *9 (11th Cir. Jan. 11, 2024) (affirming dismissal of *pro se* plaintiff with prejudice where plaintiff "repeatedly failed to follow the Federal Rules of Civil Procedure and the district court's orders[.]"); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("[D]ismissal upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse of discretion.").

## IV.    CONCLUSION

For the reasons expressed, it is **RECOMMENDED** that Defendant's Motion to Dismiss Plaintiff's Complaint [ECF No. 17] be **GRANTED**, and that Plaintiff's Complaint [ECF No. 1] be **DISMISSED**. Further, based on the futility of amendment of Plaintiff's claims under the Montreal Convention's statute of limitations, it is **RECOMMENDED** that Plaintiff's Complaint be **DISMISSED WITH PREJUDICE**.

The undersigned further **RECOMMENDS** Plaintiff's Complaint be **DISMISSED WITH PREJUDICE** as a sanction for Plaintiff's continued willful violations of the Local Rules and for submitting fake caselaw to the Court.

Objections to this Report may be filed with the district judge within **FOURTEEN** (14) days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the district judge of anything in this Report and shall constitute a waiver of a party's "right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

**SIGNED** this 24th day of July, 2025

_____
LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc:    **U.S. District Judge Roy K. Altman;**
       **All Counsel of Record**

19